Michael J. Romano
ROMANO & ASSOCIATES
400 Garden City Plaza, Suite 432
Garden City, New York 11530
(516) 248-8880
*Attorneys for Plaintiffs US Asset Partners 1 LLC,
Saint Judes Home Rescue LLC, Max Returns LLC, and
Max NY JV Redevelopment LLC*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------------x

| | |
|---|---|
| US ASSET PARTNERS 1 LLC, SAINT JUDES HOME RESCUE LLC, MAX RETURNS LLC, AND MAX NY JV REDEVELOPMENT LLC, | VERIFIED COMPLAINT |
| Plaintiffs, | Docket No. |
| -against- | |
| JOSHUA BARRY, | |
| Defendant. | |

-----------------------------------------------------------------------------x

Plaintiffs US Asset Partners 1 LLC ("US Asset"), Saint Judes Home Rescue LLC ("St. Jude"), Max Returns LLC ("Max Returns"), and Max NY JV Redevelopment LLC ("Max NY") (collectively, the "Plaintiffs"), complaining of defendant Joshua Barry (the "Defendant"), by their attorneys, Romano & Associates, alleges upon information and belief as follows:

## INTRODUCTION

1. This action involves claims for misappropriation of trade secrets, conversion, breach of fiduciary duty, unfair competition, tortious interference with prospective business advantage, and injunctive relief, arising out of Defendant's conduct both while and subsequent to performing services while working for Plaintiffs.

## PARTIES

2. At all times hereinafter mentioned, US Asset was and is a New York limited liability company with an office in the State of New York, County of Suffolk.

3. At all times hereinafter mentioned, St. Jude was and is a Delaware limited liability company authorized to do business in the State of New York with an office in the State of New York, County of Suffolk.

4. At all times hereinafter mentioned, Max Returns was and is a New York limited liability company with an office in the State of New York, County of Suffolk.

5. At all times hereinafter mentioned, Max NY was and is a Delaware limited liability company authorized to do business in the State of New York with an office in the State of New York, County of Suffolk.

6. All times hereinafter mentioned, Barry was and is a resident of the State of Kentucky with an address at 1101 English Green Lane, Unit 301, Louisville, Kentucky 40299.

7. Defendant is a licensed real estate salesperson with the State of New York, license number 10401308558.

## JURISDICTION AND VENUE

8. This action is brought pursuant to the Full Faith and Credit Clause and this Court has original jurisdiction under 28 U.S.C. §1332 because it is a civil action wherein: (1) complete diversity of citizenship exists among the parties; and (2) the amount in controversy exceeds $75,000.00, exclusive of interests and costs.

9. The amount in controversy of this matter exceeds $75,000.00 exclusive of interest and costs because Plaintiffs seek damages for losses sustained as a result of Defendant's theft of confidential information and clients and customers of Plaintiffs. Thus, the amount in controversy is satisfied for jurisdictional purposes.

10. The complete diversity requirement is satisfied because Defendant is not a citizen in the same State in which the Plaintiffs maintain their places of business. Thus, complete diversity exists amongst all of the parties.

11. Venue is proper within this District under 28 U.S.C. §1391(b)(2) as a substantial part of the events or omissions forming the basis of the claims complained of occurred in this judicial district.

## GENERAL ALLEGATIONS

12. Plaintiffs are related companies in the real estate industry.

13. A large portion of Plaintiffs' business is buying real estate from interested sellers and either (a) rehabbing the real estate with the intent to resell to an appropriated buyer; (b) maintaining the real estate as an investment to rent out to tenants for an income stream; or (c) wholesaling the property after purchasing it and reselling it to an interested investor ("Wholesale Homes").

14. Since before 2010, Plaintiffs, through their principal, William Alvaro ("Alvaro"), have spent significant time and monies (in excess of $300,000.00 to date) building proprietary customer lists (the "Customer Lists") and other databases of proprietary information (collectively, the "Proprietary Information").

15. Specifically, Plaintiffs have built and maintained the Proprietary Information by investing in software such as Podio (a cloud-based CRM owned by Citrix), Infusion Soft (now known as Keap) and Fix Your Funnel (a texting platform) and spending significant time and money customizing said software to fit the Plaintiffs' specific needs and provide them with an edge over competitors in the industry.

16. In addition, to aid in building the Proprietary Information, Plaintiffs would use (i) social media platforms such as Craigslist, Facebook and Instagram, (ii) text messages, (iii) direct mail, and (iv) internet research; and performed complex reverse-engineering processes to seek out persons or entities in specific markets who might be interested in purchasing their Wholesale Homes ("Wholesale Purchasers"), all at a monthly cost for Plaintiffs of approximately $35,000.00 on a monthly basis over the last eight (8) years.

17. Plaintiffs have also hired multiple database companies and data science consultants over the last 2-3 years to aid Plaintiffs in compiling multiple seller lists (also part of the Proprietary Information) that are superior to the basic seller lists that could easily be obtained by Plaintiff's competitors. These lists contain in excess 30,000 potential sellers.

18. The Proprietary Information is superior to other information more publicly ascertainable, in large part due to the proprietary means and methods Plaintiffs have developed and instituted to create and add to the Proprietary Information on an ongoing basis, at a cost between $50,000.00 and $60,000.00 per year.

19. Plaintiffs earn a profit from the Wholesale Purchaser when a deal is consummated.

20. Defendant began working for Plaintiffs from February 2018 through November 2019 when Defendant terminated his relationship with Plaintiffs and moved to Kentucky.

21. While working for Plaintiffs, Defendant: (i) handled the personal affairs of Alvaro; (ii) had access to intimate confidential information, including the Proprietary Information; (iii) handled the marketing and sales of Plaintiffs' Wholesale Homes to Wholesale Buyers; (iv) was responsible for managing Plaintiffs' Proprietary Information; and (v) used Plaintiffs' resources to grow the Proprietary Information.

22. Plaintiffs recently learned that Defendant had been appropriating the Proprietary Information for personal gain and to the detriment of Plaintiffs, something that has continued since he ceased his work with Plaintiffs. Specifically, he illegally appropriates the Proprietary Information by contacting individuals from the Customer Lists and negotiating his own personal fee directly with Plaintiffs' Wholesale Buyers in exchange for guaranteeing their purchase of certain Wholesale Homes owned by Plaintiffs while avoiding bids from others on the Customer Lists.

23. By guaranteeing certain of Plaintiffs' Wholesale Buyers that they would become the purchaser of the Wholesale Home in exchange for paying Defendant money, Defendant (a) undercut Plaintiffs' entire wholesale bidding process; (b) prevented other Wholesale Buyers from Plaintiffs' Customer Lists from making offers on the Wholesale Homes; and (c) prevented Plaintiffs from earning additional profits on their sale of Wholesale Homes in the event they were marketed to all Wholesale Buyers on Customer Lists.

24. Between February 2018 and November 2019, the term of Defendant's relationship with Plaintiffs, approximately 100 Wholesale Homes were sold by Plaintiffs.

25. Defendant demanded from Wholesale Buyers from Plaintiffs' Customer Lists between $2,500 and $10,000 for each Wholesale Home in order to guarantee their purchase of the Wholesale Home without interference from other potential Wholesale Buyers from the Customer Lists.

26. Subsequent to his cessation of work for Plaintiffs, Defendant has illegally accessed the Proprietary Information without Plaintiffs' permission and makes personal deals with Wholesale Buyers from Plaintiffs' Customer Lists including, but certainly not limited to, (i)

123 Lamport Boulevard, Staten Island, New York; (ii) 65 Overlook, Mastic Beach, New York and (iii) 130 Hawthorne, Mastic Beach, New York.

27. Defendant has created his own business entities through which to funnel monies earned through the misappropriation of Plaintiffs' Proprietary Information and Customer Lists, including JB10, LLC, BVG Invest LLC and Josh Barry Real Estate.

28. Defendant's personal deals made with Wholesale Buyers from Plaintiffs' Customer Lists is both illegal and a violation of the New York laws which apply to licensed real estate agents.

29. In recent weeks, Defendant has contacted multiple Wholesale Buyers of Plaintiff, now not only attempting to continue to improperly sell property developed through the Proprietary Information, but also attempting to sell other deals to buyers of Plaintiffs whose information is also Proprietary to Plaintiffs.

30. As a result of the foregoing acts of Defendant, Plaintiffs have been significantly damaged.

### AS AND FOR A FIRST CLAIM
### (Misappropriation of Trade Secrets)

31. Plaintiffs reallege and incorporate as if fully stated herein each and every allegation contained above and incorporate the same herein by this reference as though set forth in full.

32. The Proprietary Information were trade secrets possessed by Plaintiffs.

33. Defendant used the Proprietary Information in violation of its confidential relationship with Plaintiffs.

34. Defendant's use of the Proprietary Information violated its fiduciary duty to Plaintiffs.

35. The Proprietary Information was not known outside of Plaintiffs' business.

36. The Proprietary Information was not known by employees and others involved in the business.

37. By keeping the Proprietary Information on private databases and not disseminating it to others without a fiduciary or trusting relationship, Plaintiffs took extensive measures to guard the secrecy of the Proprietary Information

38. The Proprietary Information was of great value to Plaintiffs, having yielded more than $3.5 million in profit to Plaintiffs since the time Defendant began to work for or with the Plaintiffs.

39. Plaintiffs expended more than $300,000 and hundreds of hours since 2010 in developing the Proprietary Information.

40. Without access given by Plaintiffs, it would be nearly impossible for the Proprietary Information to be acquired or duplicated by others.

41. As a result of Defendant's misappropriation of Plaintiffs' trade secrets, Defendant is liable to Plaintiffs in an amount not yet determined but believed to be in excess of Five Million ($5,000,000.00) Dollars.

## AS AND FOR A SECOND CLAIM
(Conversion)

42. Plaintiffs reallege and incorporate as if fully stated herein each and every allegation contained above and incorporate the same herein by this reference as though set forth in full.

43. Plaintiffs have a legal right to the Proprietary Information.

44. Plaintiffs have a superior right of possession to the Proprietary Information.

45. Defendant exercised an unauthorized dominion over the Proprietary Information.

46. Defendant's use of the Proprietary Information was to the exclusion of Plaintiffs' rights.

47. Plaintiffs' Proprietary Information is exclusive property of Plaintiffs.

48. Defendant's taking and use of the Proprietary Information constitutes conversion.

49. As a result of Defendant's conversion, Plaintiffs' have been damaged.

50. As a result of Defendant's conversion, Defendant is liable to Plaintiffs in an amount not yet determined but believed to be in excess of Five Million ($5,000,000.00) Dollars.

## AS AND FOR A THIRD CLAIM
### (Breach of Fiduciary Duty)

51. Plaintiffs reallege and incorporate as if fully stated herein each and every allegation contained above and incorporate the same herein by this reference as though set forth in full.

52. Defendant had a fiduciary duty to Plaintiffs.

53. Defendant's misappropriation of the Proprietary Information and use of it for personal gain constituted an unfair, fraudulent, or wrongful act.

54. Defendant's misuse of the Proprietary Information to the detriment of Plaintiffs constituted an unfair, fraudulent, or wrongful act.

55. Defendant's solicitation of Plaintiffs' customers before cessation of employment constituted an unfair, fraudulent, or wrongful act.

56. Defendant's usurpation of Plaintiffs' business opportunity constituted an unfair, fraudulent, or wrongful act.

57. As a result of Defendant's breach of fiduciary duty, Plaintiffs have been damaged.

58. As a result of Defendant's breach of fiduciary duty, Defendant is liable to Plaintiffs in an amount not yet determined but believed to be in excess of Five Million ($5,000,000.00) Dollars.

### AS AND FOR A FOURTH CLAIM
(Unfair Competition)

59. Plaintiffs reallege and incorporate as if fully stated herein each and every allegation contained above and incorporate the same herein by this reference as though set forth in full.

60. The Proprietary Information was contained on internal documents and electronic storage of Plaintiffs.

61. The Proprietary Information contained detailed customer information.

62. Defendant's physical taking and exploitation of the Proprietary Information was without authorization.

63. Defendant used the Proprietary Information for use in his future business endeavors.

64. These actions by Defendant constitute Unfair Competition.

65. As a result of Defendant's unfair competition, Plaintiffs have been damaged.

66. As a result of Defendant's unfair competition, Defendant is liable to Plaintiffs in an amount not yet determined but believed to be in excess of Five Million ($5,000,000.00) Dollars.

## AS AND FOR A FIFTH CLAIM
### (Tortious Interference with Prospective Business Advantage)

67. Plaintiffs reallege and incorporate as if fully stated herein each and every allegation contained above and incorporate the same herein by this reference as though set forth in full.

68. Plaintiffs had business relations with many third parties including, but not limited to, (i) Keith Drucker, a licensed real estate broker with whom Plaintiffs have transacted business for more than eight (8) years, and (ii) Anthony Careccia of J&A Homes, with whom Plaintiffs have transacted business since May 2017.

69. Defendant interfered with Plaintiffs' business relations with many of these third parties, including Keith Drucker and Anthony Careccia, both of whom were named on Plaintiff's Customer Lists, by attempting to obtain monies from then in exchange for guaranteeing their purchase of Plaintiffs' Wholesale Homes.

70. Such acts by Defendant were for a wrongful purpose.

71. Such acts by Defendant used dishonest, unfair, or improper means, such as the theft of the Proprietary Information.

72. Such acts by Defendant constitute tortious interference with prospective business advantage.

73. As a result of Defendant's tortious interference with prospective business advantage, Plaintiffs have been damaged.

74. As a result of Defendant's tortious interference with prospective business advantage, Defendant is liable to Plaintiffs in an amount not yet determined but believed to be in excess of Five Million ($5,000,000.00) Dollars.

## AS AND FOR A SIXTH CLAIM
### (Injunctive Relief)

75. Plaintiffs reallege and incorporate as if fully stated herein each and every allegation contained above and incorporate the same herein by this reference as though set forth in full.

76. Plaintiffs are being irreparably harmed by Defendant as Defendant is stealing customers from Plaintiffs.

77. As detailed above, Plaintiffs are likely to succeed on the merits of this case.

78. The balance of hardships is tipped decidedly toward Plaintiffs, as they are losing significant monies and future business as a result of Defendant's acts.

79. As a result of the foregoing, Defendant should be temporarily and permanently enjoined from having access to the Proprietary Information and contacting or transacting business in any way with any persons or entities discovered as a result of Defendant's use of the Proprietary Information.

## AS AND FOR A SEVENTH CLAIM
### (Punitive Damages)

80. Plaintiffs reallege and incorporate as if fully stated herein each and every allegation contained above and incorporate the same herein by this reference as though set forth in full.

81. Defendant's actions were solely designed to afford Defendant personal gain to the detriment of Plaintiffs.

82. Defendant's actions constitute a fraudulent or evil motive on his part.

83. Defendant's actions constitute a conscious and deliberate disregard of the interests of others.

84. Defendant's actions were willful and wanton.

85. Defendant's actions were close to criminality,

86. Defendant's actions were reckless and of a criminal nature.

87. Defendant's actions were malicious.

88. Defendant's actions were gross and outrageous.

89. As a result of the foregoing, Plaintiffs should be awarded punitive damages in excess of Ten Million ($10,000,000.00) Dollars

## DEMAND FOR JURY TRIAL

90. Plaintiffs hereby demand a jury trial on all claims with respect to which they have a right to jury trial.

WHEREFORE, Plaintiffs demand judgment against Defendant as follows:

(1) On the First Claim, in an amount not yet determined, but believed to be in excess of Five Million ($5,000,000.00) Dollars.

(2) On the Second Claim, in an amount not yet determined, but believed to be in excess of Five Million ($5,000,000.00) Dollars.

(3) On the Third Claim, in an amount not yet determined, but believed to be in excess of Five Million ($5,000,000.00) Dollars.

(4) On the Fourth Claim, in an amount not yet determined, but believed to be in excess of Five Million ($5,000,000.00) Dollars.

(5) On the Fifth Claim, in an amount not yet determined, but believed to be in excess of Five Million ($5,000,000.00) Dollars.

(6) On the Sixth Claim, for a temporary and permanent injunction.

(7) On the Seventh Claim, punitive damages in excess of Ten Million ($10,000,000.00) Dollars.

TOGETHER with such other or further relief, including an award of costs, disbursements and reasonable attorney's fees, and such other and further relief as this court deems just and proper.

Dated: Garden City, New York
       February 5, 2020

Respectfully submitted,

_____
Michael J. Romano, Esq.
ROMANO & ASSOCIATES
*Attorneys for Plaintiffs*
400 Garden City Plaza, Suite 432
Garden City, New York 11530
(516) 248-8880

**DEFENDANT'S ADDRESS:**

Joshua Barry
1101 English Green Lane
Unit 301
Louisville, Kentucky 40299

## VERIFICATION

The undersigned, William Alvaro, deposes and states herein: Deponent is the president of each plaintiff named in the within action; deponent has read the foregoing Verified Complaint, and knows the contents thereof; the same is true to deponent's own knowledge except as to the matters therein stated to be alleged on information and belief, and that as to those matters deponent believes it to be true.

The undersigned swears that the foregoing statements are true, under the penalties of perjury.

Dated: Garden City, New York
February 5, 2020

_____
WILLIAM ALVARO

Sworn to before me this 5th
day of February 2020

_____
Notary Public

MICHAEL JOSEPH ROMANO
Notary Public, State of New York
No. 02RO6243459
Qualified in Nassau County
Commission Expires June 20, 2023